# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Judge Blanche M. Manning |
| ) | |
| v. ) | Case No. 02 CR 418-1 |
| ) | |
| WILLIAM R. KAPP, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the court on a limited remand by the Seventh Circuit Court of Appeals to determine whether this court would impose the defendant's original sentence had the Sentencing Guidelines been advisory rather than mandatory. *See U.S. v. Paladino*, 401 F.3d 471 (7th Cir. 2005). In *Paladino*, the court stated that:

> Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence with an appropriate explanation, or inform this court of its desire to resentence the defendant.

*Id.* at 484 (citation and quotation marks omitted). In making this statement, the court should obtain the views of counsel but need not require the presence of the defendant. *Id.*

In January 2001, Kapp and six co-defendants were charged with conspiracy to violate the Endangered Species Act and the Lacey Act in violation of 18 U.S.C. § 371, as well as multiple violations of the ESA, 16 U.S.C. §§ 1538 and 1540, and the Lacey Act, 16 U.S.C. § 3371. The facts supporting these charges are set out more fully in *United States v. Kapp*, 419 F.3d 666 (7th Cir. 2005), and will not be recounted in detail here. Suffice it to say that Kapp was charged with: transporting and killing endangered tigers; selling and offering to sell an endangered leopard; selling tigers and leopards and their parts knowing that they were sold in violation of the ESA and its regulations; and knowingly making and causing to be made false records related to endangered tigers and leopards and their parts knowing that they are or were intended to be

transported in interstate commerce.

After an eight-day jury trial, Kapp was found guilty on all counts but two. Pursuant to the presentence report prepared by the Probation Office, the guideline range was 41 to 51 months. The court rejected Kapp's argument at the November 14, 2003, sentencing that he should not receive an enhancement for being an organizer or leader, and sentenced him to 51 months imprisonment followed by a three-year term of supervised release. The court also ordered Kapp to pay a fine of $5,000 and perform 300 hours of community service.

In determining whether it would impose the same sentence had the guidelines been advisory rather than mandatory, the court has reviewed the written submissions of the parties as to this remand (including letters from Mr. Kapp and his parents), the sentencing transcript, and the presentence report. As required under § 3553(a), the court has considered the nature and circumstances of the offense, the history and characteristics of the defendant, the purpose for imposing the sentence,[1] the kinds of sentences available, the advisory guideline range of 41 to 51 months, and the need to avoid unwarranted sentencing disparities.

The court concludes based on its consideration of all of the relevant factors that it would impose the same sentence. As the Seventh Circuit noted in its opinion, "surely most everyone could agree that the actions of William Kapp were detestable." *Kapp*, 419 F.3d at 667. The Seventh Circuit aptly summarized Kapp's activities as follows:

> From 1997 to 1999, Kapp and others purchased, killed, transported, and sold numerous exotic animals, including tigers and leopards, which are protected under the Endangered Species Act, 16 U.S.C. §§ 1531, *et seq*. Kapp and the others did not hunt any of these animals in the wild. Instead, they shot the animals while they were helplessly confined, sometimes even posing afterwards for safari-style photographs with the carcasses. Kapp made thousands of dollars selling the meat, hides, and other parts of the animals, until the United States Fish & Wildlife Service ("USFWS") caught wind of these activities.

---

[1] According to § 3553(a), the sentence imposed should: (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) afford adequate deterrence to criminal conduct; (c) protect the public from further crimes of the defendant; and (d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The court sat through Kapp's trial, listened to all of the testimony, and viewed all of the evidence presented against Kapp. Kapp and his cohorts showed no respect for these beautiful and majestic (not to mention endangered) animals, killing them at close range and then proudly posing with the carcasses for photographs. Kapp then participated in skinning certain of the animals as well as selling the meat and hides to various purchasers. Kapp also took part in the manipulation of federal forms to conceal his conduct. Finally, the court found that Kapp was an organizer and leader with respect to the charged conduct. Based on this evidence, the court believes unequivocally that the sentence of 51 months is more than reasonable. While at the top end of the guideline range, 51 months properly reflects the seriousness of Kapp's crime and provides a proper punishment for the offense. Moreover, the court is confident that the sentence of 51 months will deter Kapp as well as others from committing such a crime in the future and protect defenseless endangered animals from such mean-spirited cowardice.

The court acknowledges that Kapp's submissions rely on his deteriorating health and the purported lack of treatment at the Federal Medical Center in Lexington, Kentucky. According to Kapp's papers, he suffers from reflex sympathetic dystrophy (RSD), the symptoms of which include pain, swelling, weakness, movement disorder, muscle atrophy and dystrophy. Kapp contends that he is not receiving the proper medical care and asks this court to shorten his sentence as a result. While the court regrets Kapp's medical condition, such post-sentencing events are not relevant on a *Paladino* remand. *U.S. v. Re*, 419 F.3d 582, 584 (7th Cir. 2005) ("in a *Paladino* remand the conduct or circumstances that bear on the § 3553(a) factors must have been in existence at the time the original sentence was imposed. . . . Post-sentencing events or conduct simply are not relevant to th[e *Paladino*] inquiry."). No medical issues were raised by Kapp at sentencing. Moreover, the court notes that the letter submitted to the court by Kapp's father indicates that Kapp has filed a civil suit in Kentucky to obtain surgery that he states he needs.

Finally, in his letter to the court, Kapp asserts that the court did not consider over 40

character letters submitted on his behalf, and accuses the Probation Office of deliberately withholding these letters from the court. At this court's request, the probation officer assigned to this case sent a copy of a cover letter dated November 6, 2003, which attached 17 character reference letters submitted on Kapp's behalf. The court has reviewed the sentencing transcript in which the court refers to only one letter submitted on behalf of Kapp. While the court has no reason to believe that it did not consider at the November 14, 2003, sentencing the 17 letters sent by the probation officer (and perhaps misspoke at sentencing), the court has now, in an abundance of caution, reviewed these letters again. They do not in any way alter this court's decision to impose the same sentence knowing that the guidelines are advisory.

**ENTER:**  /s/ Blanche M. Manning
**Blanche M. Manning**
**United States District Judge**

**DATE:** May 11, 2006